IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

| | |
|---|---|
| HOLLY ANN CORNS<br>4773 Leap Ct.<br>Hilliard, Ohio 43221<br><br>on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GERVASI VINEYARD & ITALIAN BISTRO, LLC<br>c/o Statutory Agent<br>Scott Swaldo<br>1700 55th Street, NE<br>Canton, Oho 44721<br><br>and<br><br>GERVASI 1700, LLC.<br>c/o Statutory Agent<br>Theodore Swaldo<br>7170 Farmdale NW<br>North Canton, Ohio 44720<br><br>    Defendants. | CASE NO. 2023CV01252<br><br>JUDGE: Haupt<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Jury Demand Endorsed Herein) |

Plaintiff Holly Ann Corns ("Plaintiff"), on behalf of herself and all others similarly situated, for her class action Complaint against Defendant Gervasi Vineyard & Italian Bistro, LLC and Gervasi 1700, LLC (collectively "Defendant"), states and alleges as follows:

### INTRODUCTION

1. This case challenges policies and practices of Defendant of not paying its tipped, non-exempt employees, including Plaintiff and other similarly situated employees, the applicable

minimum wage for all of the hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.01, *et seq.*, and Article II § 34(a) of the Ohio Constitution.

2. Plaintiff brings this case as a class action pursuant to Civ. R. 23 to remedy violations of the Ohio Constitution on behalf of herself and other similarly situated employees employed by Defendant in Ohio (the "Class" or "Class Members") and as a collective action under the FLSA.

3. Defendants pay its tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Ohio, the OMFWSA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

4. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. § 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

5. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir.1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co.,*

2

*LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA.", citing 29 U.S.C. § 203); *Bernal v. Vankar Enter., Inc.,* 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

6. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and 50% of the Ohio minimum wage rate). *See* 29 U.S.C. § 203(m).

7. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Driver v. AppleIllinois, LLC,* 739 F.3d 1073, 1075 (7th Cir.2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

8. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Harrison v. Rockne's Inc.,* 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017)(Plaintiffs sufficiently alleged a claim when "they alleged that they were required to perform non-tipped related duties more than 20% of their regular work."); *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

3

9. Defendants violated the FLSA and OMFWSA in the following respects:

   a. **Violation for requiring tipped employees to share tips with non-tipped employees (tip pooling):** Defendants took a portion of Plaintiff's and other similarly situated employees' tips and gave it to non-tipped employees, including serving assistants, which reduced their wages below the minimum hourly wage required for tipped employees.

   b. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiff and other similarly situated employees were was required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line; cleaning, chairs, high chairs and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash; polishing glassware, stocking to-go boxes and bags; stocking chocolates; filling parmesan cheese containers; wiping and putting inserts into check presenters; restocking servers stations; helping the dishwashers; making trips to a separate kitchen facility to wash dishes when one broke down; training new servers; and attend team meetings.

   c. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff and other similarly situation employees were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.

10. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant because Defendant transacts business in this state.

12. This Court has jurisdiction of the federal claims pursuant to 29 U.S.C. §216(b).

13. Venue is proper in this Court because Stark County is where Defendant maintains its principal place of business.

## PARTIES

14. Plaintiff is an adult individual residing within Ohio.

15. Within the three years preceding the filing of this action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

16. At all relevant times, Plaintiff was an "employee" within the meaning of the Ohio Constitution and R.C. 4111.03 and 29 U.S.C. §203(e) and was engaged in commerce.

17. Defendant is an Ohio for-profit limited liability companies with their principal place of business within Stark County.

18. At all relevant times, Defendant was an "employer" within the meaning of the Ohio Constitution and R.C. 4111.03 and 29 U.S.C. §203(d), was an enterprise in commerce within the meaning of 29 U.S.C. §203(s)(1), and had yearly gross revenue in excess of $500,000.

## FACTUAL ALLEGATIONS

19. Defendant owns and operates restaurants in Ohio operating under the trade name Gervasi Vineyard and they include The Bistro, The Crush House, The Piazza, and The Twisted Olive (collectively "Gervasi Restaurants"). Although each of the Gervasi Restaurants are separate facilities, they are all commonly controlled by Defendant.

20. Defendant had operational control over the Gervasi Restaurants regarding significant aspects of the day-to-day functions of Plaintiff and the Class, including supervising and controlling their schedule and conditions of employment.

5

21. Defendant had authority over the Gervasi Restaurants to hire, fire and discipline employees, including Plaintiff and the Class.

22. Defendant had authority over the Gervasi Restaurants to set rates and methods of compensation of employees, including Plaintiff and the Class.

23. Defendant had authority over the Gervasi Restaurants to control and maintain records of employees, including Plaintiff and the Class.

24. Defendant employs servers at the Gervasi Restaurants to provide services to its restaurant patrons.

25. Plaintiff was employed as a server by Defendant within the last three years. Members of the Class were employed as servers at the Gervasi Restaurants within the last three years.

26. Defendant pays its servers, including Plaintiff and the Class Members, at an hourly rate below minimum wage. By paying Plaintiff and Class less than the minimum wage per hour, Defendant is taking advantage of a tip credit which allows Defendant to count a portion of the amounts servers receive as tips towards Defendant's obligation to pay tipped employees a minimum wage.

27. However, Defendant maintained a policy and practice whereby servers were required, during their regular shifts, to perform non-tip producing "side work" unrelated to the servers' tipped occupation, as well as non-tip producing side work related to the servers' tipped occupation.

28. Specifically, Defendant maintained a policy and practice whereby Servers were required to spend a substantial amount of time performing non-tip producing side work and opening and closing duties.

29. While Plaintiff and Class Members were performing non-tip producing side work and opening and closing duties, Defendant continued to pay Plaintiff and Class Members less than minimum wage and relied on the tip credit to meet Defendant's obligation to pay Plaintiff and Class Members minimum wage.

30. Defendant's policy and practice of paying Plaintiff and Class Members the tipped minimum wage while they were performing non-tip producing work violated Article II § 34a of the Ohio Constitution. As such, Plaintiff and the Class Members were not compensated appropriately at the constitutionally mandated minimum wage.

31. Plaintiff and other similarly situated servers, bartenders, and event coordinators frequently spent more than 20% of their time (between two hours and four hours before and/or after their shift), performing these non-tip generating duties, during which they did not interact with customers and could not earn tips.

32. By requiring Plaintiff and other servers, bartenders and event coordinators to perform non-tipped work unrelated to their tipped occupation (i.e., "dual jobs"), and excessive amounts of non-tipped worked even if related to their tipped occupation, while being paid the sub-minimum tip credit wage rate, Plaintiff and other similarly situated servers were illegally undercompensated for their work.

33. In addition, Defendant required Plaintiff and other similarly situated servers, bar tenders and event coordinators to purchase certain clothing to work for Defendant, which reduced their wages further below the minimum hourly wage required for tipped employees.

**(Failure to Keep Accurate Records)**

34. Upon information and belief, Defendant failed to make, keep and preserve accurate records of all of the unpaid and/or underpaid work performed by Plaintiff and other similarly

7

situated servers and bartenders, including the amount of time they spent performing non-tipped worked.

35. Upon information and belief, Defendant failed to provide advance notice of its practice of using a tip credit.

## COLLECTIVE ACTION ALLEGATIONS

36. Employees complained to management that they were being forced to work up to four hours after their shifts ended performing non-tip supporting work but Defendant refused to change its policy.

37. Upon information and belief, in February 2022, Defendant notified current employees of its unlawful practice of using a tip credit for wages paid by servers when performing non-tip supporting work.

38. After the notification in February 2022, Defendant changed its policies regarding use of the tip credit but did not pay any back wages for the past unlawful practices.

39. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

40. Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

41. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All former and current servers who either: 1) were employed by Defendant at the Gervasi Restaurants (excluding Kristen DeWitt, Shannon Ruth, Brook Steiner and Danessa Alexander) who were paid the tipped minimum wage at any time during the three (3) years preceding the date of the filing

8

of this action through formal disposition of this matter ("FLSA Class"); or 2) opted-in to the collective class in U.S. District Court Case No. 5:22-cv-00476.

42. Plaintiff is unable to state at this time the exact size of the FLSA Class, but upon information and belief, avers that it consists of more than 100 persons.

43. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid minimum wages, liquidated damages, attorneys' fees and costs under the FLSA. The FLSA Class Members are similarly situated to Plaintiff with regard to their wages and claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as his own in bringing this action.

44. Like Plaintiff, the FLSA Class Members were, *inter alia*, required to share their tips with non-tipped employees, were subjected to the same illegal deductions from their wages and tips, and performed substantial work that was unrelated to their tip producing duties.

45. Like Plaintiff, the FLSA Class Members were subject to illegal tip pooling, deductions, and expenses that dropped their compensation below the minimum wage.

46. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as his own in bringing this action.

47. The FLSA Class Members are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to "opt-in" pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid compensation, liquidated damages, attorneys' fees and costs under the FLSA.

48. Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action pursuant to Civ. R. 23(A) and (B)(1) and (3) on behalf of herself and a class of persons employed by Defendant in Ohio within the last three years defined as:

> All current and former servers who either: 1) were employed by Defendant at the Gervasi Restaurants (excluding Kristen DeWitt, Shannon Ruth, Brook Steiner and Danessa Alexander) who were paid the tipped minimum wage at any time during the three (3) years preceding the date of the filing of this action through formal disposition of this matter; or 2) or 2) opted-in to the collective class in U.S. District Court Case No. 5:22-cv-00476..

50. The Class is so numerous that joinder of all Class Members is impracticable. Plaintiff is unable to state the exact size of the potential Class but, upon information and belief, avers that it consists of more than 100 people.

51. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from Defendant's records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For the purpose of notice and other purposes related to this action, the Class Members' names and addresses are readily available from Defendant. Notice can be provided by means permissible under Civ. R. 23.

52. Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

53. Plaintiff and the Class Members are and/or were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay minimum wages.

54. Plaintiff and the Class Members have all sustained similar types of damages as a result of Defendant's failure to comply with Article II § 34a of the Ohio Constitution.

55. Plaintiff and the Class Members have all been injured in that they have been under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected Plaintiff and the Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to Plaintiff and to each of the Class Members.

56. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

57. Plaintiff is able to fairly and adequately protect the interests of the Class Members and has no interests antagonistic to the Class Members.

58. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

59. A class action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

60. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

61. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.

62. On the other hand, important public interests will be served by addressing the matter as a class action.

63. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

64. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Class Members, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.

65. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

66. This action is properly maintainable as a class action under Civ. R. 23.

67. Common questions of law and fact exist as to the Class Members that predominate over any questions only affecting Plaintiff and the Class Members individually and include, but are not limited to, the following:

    (a)    Whether Defendant violated Article II § 34a of the Ohio Constitution;

    (b)    Whether Defendant paid Plaintiff and the Class Members at the proper minimum wage for all hours worked; and,

    (c)    Whether Defendant failed to pay all wages due to Plaintiff and the Class Members within 30 days of their regularly scheduled payday.

## COUNT ONE

### Article II § 34a of the Ohio Constitution- Unpaid Minimum Wages
### (Brought on behalf of Plaintiff and the Class Members)

68. Plaintiff, on behalf of herself and the Class Members, alleges and incorporates by reference all allegations in all preceding paragraphs.

69. Defendant has engaged in a widespread pattern, policy, and practice of violating Article II § 34a of the Ohio Constitution, as detailed in this Complaint.

70. At all times relevant, Plaintiff and the Class Members have been employees of Defendant, and Defendant has been an employer of Plaintiff and the Class Members within the meaning of Article II § 34a of the Ohio Constitution.

71. At all times relevant, Plaintiff and the Class Members have been covered by Article II § 34a of the Ohio Constitution.

72. Defendant failed to pay Plaintiff and the Class Members the minimum hourly wages to which they are entitled under Article II § 34a of the Ohio Constitution.

73. Defendant was not eligible to avail itself of the tipped minimum wage rate under Article II § 34a of the Ohio Constitution because Defendant required Plaintiff and the Class

Members to perform a substantial amount of dual job duties and side work. During these periods, Defendant compensated Plaintiff and the Class Members at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by Article II § 34a of the Ohio Constitution.

74. Due to Defendant's violations of Article II § 34a of the Ohio Constitution, Plaintiff and Class Members are entitled to recover from Defendant their unpaid minimum wages, an additional amount equal two times the amount of back wages owed within three years of the violation or of when the violation ceased if it was continuing in nature, and reasonable attorneys' fees and costs.

## COUNT TWO

### Fair Labor Standards Act

75. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

76. Defendant's practice and policy of not paying Plaintiff and other similarly situated servers, bartenders and event coordinators the minimum wage for the hours they worked in a workweek violated the FLSA, 29 U.S.C. § 206.

77. Defendant's practices and policies violated the tip credit provision of the FLSA, 29 U.S.C. §203(m).

78. Defendant's failure to keep accurate records of the hours worked each workday and workweek by Plaintiff and other similarly situated servers, bartenders and event coordinators (including records reflecting hours worked performing tipped work verses non-tipped work) violated the FLSA, 29 C.F.R. § 516.2(a)(7).

79. By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

80. As a result of Defendant's practices and policies, Plaintiff and other similarly situated servers, bartenders and event coordinators have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all persons similarly situated, pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action;

B. Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b) and R.C. § 4111.14(K);

C. Certify this case as a Civ. R. 23 class action;

D. Enter judgment against Defendant and in favor of Plaintiff and the Class Members;

E. Award Plaintiff and the Class Members actual damages for unpaid wages;

F. Award Plaintiff and the Class Members additional damages equal to two times the amount of unpaid wages;

G. Award Plaintiff and the Class Members pre-judgment and post-judgment interest at the statutory rate;

H. Award Plaintiff and the Class Members attorneys' fees, costs, and disbursements; and

I. Award Plaintiff and the Class Members further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Robert B. Kapitan

Robert B. Kapitan (0074327)
Kapitan Legal Services
1615 Akron Peninsula Rd., Suite 103
Akron, Ohio 44313
(330) 818-2991 – telephone
(330) 617-4285 – facsimile

and

Thomas Holmes (0073794)
Holmes Legal Services, LLC
34194 Aurora Road, Suite 295
Solon, Ohio 44139
(216) 401-8123
tcholmes@holmeslegalservices.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2023, a copy of the foregoing First Amended Complaint was served by electronic mail upon:

Kristen Moore, Esq.
Plakas Mannos
kmoore@lawlion.com

/s/ *Robert B. Kapitan*
One of the Attorneys for Plaintiff